# IN THE COURT OF APPEALS OF IOWA

No. 24-1983
Filed November 13, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERIK MICHAEL FINSAND,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Ashley Beisch, Judge.

Erik Finsand appeals his conviction for indecent exposure. **AFFIRMED.**

Gary W. Kendell of McEnroe, Gotsdiner, Steinbach, Rothman & Kendell, P.C., West Des Moines, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered without oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Erik Finsand appeals his conviction for indecent exposure–masturbation alternative, a serious misdemeanor, arising from acts of self-stimulation in a Walmart store. Finsand challenges the sufficiency of the evidence supporting the district court's finding of guilt following a bench trial. Upon our review, we affirm.

I.      **Background Facts and Proceedings**

This appeal presents the following issue: if an individual masturbates in a public location where others are present but is not observed by anyone at the time of the act, is a crime committed under recently amended Iowa Code section 709.9 (2023)?

A reasonable factfinder could have found the following. Police were dispatched to a Walmart store in Boone on November 20, 2023, upon reports of "suspicious activity" by a man, Finsand, who was following two female customers in the store. T.A. testified Finsand approached her and asked her "to go out sometime." After T.A. declined, Finsand "just kind of stood there and was kind of watching [her]." Finsand followed her as she moved to other areas of the store. T.A. felt "[u]ncomfortable and just kind of weirded out." T.A. observed Finsand was wearing a trench coat and his hands were "pretty deep in his pockets." She "didn't see" Finsand masturbating or doing anything with his hands. She did not see Finsand's "genital area." T.A. contacted her father, who came to Walmart and walked her to her car after she completed her shopping.

Finsand also approached K.M. while she was shopping. He "said something" to K.M., which she "didn't understand" and she walked away. K.M. "started to feel uncomfortable" as she noticed Finsand "was just kind of lingering"

and "observing" her as she moved to different areas of the store. K.M. did not see Finsand's genital area or his hands. She believed his hands "were down either at his sides or in his pockets," but she wasn't sure because she "was making eye contact." After about ten minutes, K.M. called her husband to report that she thought she was "being stalked."

Police Sergeant Ryan Palmer arrived at Walmart and located Finsand in the craft area. Palmer testified, "He was facing sideways to me as I came around the aisle, and the first thing I noticed was some very quick movements of his hands around his zipper"; "His hands went straight to his zipper area, and it appeared that he was zipping up his zipper as he turned around and faced away from me." Officer Palmer did not see Finsand's genitals. Officer Palmer asked Finsand "what he was doing." Finsand responded that "he was having trouble finding a girlfriend, so he was going up to ladies and asking them if they wanted to date him." Officer Palmer asked Finsand if he was masturbating in the store, and Finsand responded "that he was just over-adjusting because of his boxers."

Charles Higgins worked for Walmart as an asset protection investigator. Higgins was not in the store at the same time as Finsand on November 20, but he reviewed video surveillance recordings later that day. On video, Higgins observed Finsand "self-stimulating" and "exposing himself" throughout the store. Higgins testified, "Several times after looking at women, [Finsand] would go into aisles and appear to self-stimulate." Higgins believed Finsand's behavior and movements appeared to show he was "concealing [him]self from other people."

Officer Palmer also reviewed the security video. He described "several times" in the video that Finsand touched his genitals and "you can see his erect

penis." Officer Palmer stated that when customers approached, Finsand "appears to be startled" and "tucks . . . the front of his body in towards" the shelves "to hide himself." Officer Palmer testified that in the forty-plus video clips, there appeared to be a "general theme" of Finsand "watching females" and then self-stimulating, covering his erection if other people came near.

The State charged Finsand with one count of indecent exposure under two alternative theories. *See* Iowa Code § 709.9; *State v. Wilson*, 5 N.W.3d 628, 632 (Iowa 2024) (discussing the "three alternative acts that would constitute indecent exposure" under section 709.9). Finsand pled not guilty, waived his right to a jury, and the case proceeded to a bench trial. The district court found Finsand not guilty under the first theory; i.e., the State presented insufficient evidence to show that Finsand "exposed his genitals or pubic area to another (victim) who was not [his] spouse . . . with the specific intent to arouse or satisfy the sexual desire of [Finsand] or another (victim)," and "[he] knew or reasonably should have known that the act was offensive to another (victim) or to other viewers." *See also Wilson*, 5 N.W.3d at 632 (Iowa 2024) (citing Iowa Code § 709.9(1)). But the court found Finsand guilty under the alternative theory raised by the State; that Finsand "masturbate[d] in public [i]n the presence of another." *See id.* (citing Iowa Code § 709.9(2)). Finsand appeals.

## II. Standard of Review

We review challenges to the sufficiency of the evidence "for correction of errors at law and will uphold the [factfinder]'s verdict if it is supported by substantial evidence." *State v. Kieffer*, 17 N.W.3d 651, 655 (Iowa 2025). Evidence is considered substantial if it is sufficient to "convince a rational fact finder the

defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022)). The standard applies equally to jury trials and bench trials. *State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). "[W]e view the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Kieffer*, 17 N.W.3d at 655 (cleaned up).

## III.    Discussion

After concluding the State had not met its burden beyond a reasonable doubt under the first alternative of indecent exposure, the district court made detailed findings and conclusions relevant to the finding of guilt under the masturbation alternative of indecent exposure. Relating to that theory, the district court noted the State had to prove the following elements: "(1) On or about the 20th day of November, 2023, in Boone County, Iowa, [Finsand] did masturbate in public,"[1] "(2) In the presence of another." Specifically, the court outlined "five distinct instances" that Finsand was depicted masturbating on video and concluded Finsand was "in the presence of another" during three of those instances. Upon our review, we conclude substantial evidence supports the court's findings on at least two of those instances.[2]

But Finsand does not dispute the court's finding that he masturbated in Walmart or that he was in the presence of others during those acts. Rather, he

---

[1] "'[M]asturbate' means physical stimulation of a person's own genitals or pubic area for the purpose of sexual gratification or arousal of the person, regardless of whether the genitals or pubic area is exposed or covered." Iowa Code § 709.9(2)(c).

[2] Finsand can be seen on the video fondling or stroking his bare penis near others in the automotive and shoe areas of the store.

claims that because no witness viewed his masturbation "in real time," his conviction cannot stand. Finsand claims the evidence was insufficient to establish "a victim" because the three witnesses who testified they encountered him in the store "did not see [him] masturbating" and the two witnesses who testified about their review of Walmart surveillance video recordings depicting him masturbating did not view the video "when it was occurring." This challenge implicates the second element of the crime, namely, that the act occurred "in the presence of another." *See* Iowa Code § 709.9(2).

To support his claim, Finsand relies on the supreme court's recent discussion about the three alternatives of indecent exposure under section 709.9:

> A plain reading of the statute indicates the legislature intended to criminalize three alternative acts that would constitute indecent exposure. The first act is when a person exposes their genitals or pubic area to another who is not the person's spouse, with the intent to arouse or satisfy the sexual desires of either party, and the person knew or reasonably should have known the act was offensive to the viewer. *Id.* § 709.9(1). The second act is when a person commits a sex act in the presence or view of a third person with the intent to arouse or satisfy the sexual desires of either party, and the person knew or reasonably should have known the act was offensive to the viewer. *Id.* The third act is when a person masturbates in the public presence of another. *Id.* § 709.9(2).
>
> We note that for all versions of the crime, it consists of the defendant exposing themselves "to another" or masturbating "in the presence of another." Thus, we have previously held that indecent exposure is "essentially a visual assault crime," and to successfully convict a defendant, the state must produce a victim who saw the exposure. *State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008) (quoting *State v. Bauer*, 337 N.W.2d 209, 211 (Iowa 1983) (en banc)). This is because the legislature criminalized "only visual sexual assaults upon unwilling viewers." *Bauer*, 337 N.W.2d at 211. In addition, the unit of prosecution for this visual assault crime is the act of doing something "to another," not to "the world generally," "a person or persons," "one or more persons," or "any number of persons." This indicates each person—i.e., each "another"—who is a victim of the indecent exposure amounts to a separate offense that can be prosecuted. Therefore, we hold that the unit of prosecution for

indecent exposure under Iowa Code section 709.9(2)(*a*) is per viewer, not per exposure.

*Wilson*, 5 N.W.3d at 632. Relying on *Wilson*, Finsand claims that "to successfully convict [him], the State must produce a victim who saw the exposure."

We acknowledge the court's reiteration that indecent exposure is a "visual intent crime" that "require[s] a third person to view the exposure." *Id.* at 632–33. All the same, we note that the issue presented in *Wilson* related to the unit of prosecution for indecent exposure. And in *Wilson*, two witnesses observed the defendant masturbating. *See id*. at 630. So the distinction between the elements of the statutory alternatives requiring "to another" and "in the presence of another" were not relevant. But the distinction is significant in a case such as this. On this issue, the district court detailed its findings as follows:

> "In the Presence of Another" is not defined in Iowa Code section 709.9. However, this is notably different language used than in the prior theory of "to another" as used earlier in the statute. The statute is very clear that under the first theory alleged in this matter, a "viewer," "victim," or "observer" is required. It is not as clear from the language used from "In the Presence of Another" whether a "viewer," "victim," or "observer" is required to have actually witnessed the masturbation or simply have been present while the act was occurring. As stated previously, the case law cited was from a prior statute that did not include this theory option with this language. The Defendant argues this statute, by language, requires a "viewer," "victim," or "observer." The State argues that the language, itself in plain meaning, only requires that "another" be present. To put it another way, "another person" only must be in the "vicinity or close proximity." The Court agrees with the State's interpretation of the plain meaning of the language used in Iowa Code [section] 709.9(2) and the distinction of the language used from the prior language used in [section] 709.9(1).
>
> . . . .
>
> After review of the evidence in its entirety, the Court's analysis leads to the conclusion that on the 20th day of November, 2023, in Boone County, Iowa, the defendant did masturbate in public in the presence of another beyond a reasonable doubt. The Court is convinced Defendant is guilty beyond a reasonable doubt of

Indecent Exposure in violation of Iowa Code section 709.9 (serious misdemeanor).

*See State v. Guthrie*, No. 10-1285, 2011 WL 2694713, at *3 (Iowa Ct. App. July 13, 2011) (noting, in rejecting the defendant's sufficiency-of-the-evidence challenge to his indecent exposure conviction under a predecessor statute, that the defendant "chose to masturbate near the Drake University campus, in an area where others were likely to see him" and finding substantial evidence the defendant knew or should have known his actions would be visible to "people . . . walking along the street in the afternoon"); *State v. Kuester*, No. 15-0650, 2016 WL 5930410, at *1 (Iowa Ct. App. Oct. 12, 2016) (rejecting the defendant's claim that the State failed to prove he "exposed himself to either complaining witness" because section 709.9 did not "require[] exposure to a targeted viewer" (citing *State v. Jorgensen,* 758 N.W.2d 830, 836 (Iowa 2008) ("The statute does not require the actor to be aware or have knowledge of the specific person or persons to whom he is exposing himself. . . .  It is reasonable to assume that a person who exposes himself in a public place runs the risk that he will be observed by more than his targeted audience."))).

Observing the evidence in the light most favorable to the State, we conclude the State presented substantial evidence from which a rational trier of fact could find that Finsand masturbated in public in the presence of another.  We therefore affirm Finsand's conviction for indecent exposure.

**AFFIRMED.**